Mr. Putnam, you have the floor. Thank you, Your Honor. I am Bill Putnam. I am appearing virtually on behalf of the appellant, Ila Reid. This is a case that arises out of an interpleader action from the Eastern District of Arkansas. It involved ownership of life insurance proceeds and the district court made two rulings, only one of which is at issue here. The first ruling regarding the entitlement to the ownership of the proceeds, the court determined that my client, Ila Reid, was the proper beneficiary and that is not disputed, that is not an issue on appeal. The second issue that is disputed and is before the court now is whether the district court erred in granting Primerica's motion for summary judgment on Ila Reid's counterclaim for breach of contract. That is an important issue in this case because under Arkansas law, if she also a 12% statutory penalty or damages, as the statute says, as a result of Primerica's failure to pay the claim in a timely manner, which would be 30 days from date of receipt of the claim. I want to talk a little bit about the factual background because that would only be if there was an unwarranted delay, right? That is correct. Is that a jury question under governing law? I don't believe in this case, your honor, because the record is clearly developed on that. But we wouldn't order this. We're just talking about remedy now. For a new trial of some kind? What I would like the court to do in this case is rule that the ruling granting Primerica's motion for summary judgment was erroneous and then send the case back to the merits of the counterclaim. What would we then do with the part that's not on appeal? It's not an issue, your honor. The life insurance proceeds have been paid. I apologize. I just worry a lot about remedy and lawyers often come up and haven't even thought about it. What does our order say if we agree with you that the trial court erred and the case would be remanded for further proceedings? You don't just vacate the ruling on the counterclaim? I would have thought you'd say that. I would be fine with that, your honor. But that still leaves, if it's vacated, then that still leaves the counterclaim pending and has to be resolved. As I understand the case, as I see the remedy, it would require additional action from the district court. Okay. Well, in this case, as the court has noted and as the district court noted in its opinion, the interpleader protection from additional liability kicks in in a case like this if the stakeholder fails to choose between adverse claims and there is nothing more that amounts to a breach of a legal duty. And my client's argument is that there was much more in this particular case. And it goes back to 2002, April of 2002, when Mr. Reed, policy owner, requested a change of beneficiary form from Primerica. Can I just ask you a question to set the legal table for this, for the fact I know you're going to go with. Has the 8th Circuit ever ruled on your must be blameless theory? Not in so many words, your honor. At least not that I'm aware of. Bauer doesn't come close. And, you know, Bauer's kind of young and excited. Bauer just says colorable and it's completely dicta. So have we ever picked up on Hovis and these other cases that are cited for the 3rd Circuit and the 5th Circuit for this blameless notion? I don't believe so, your honor. Okay. That's enough. Okay. I didn't think so either, but. Okay. I did check before the argument and if it was out there, I missed it again. Primerica received the form in April of 2002 that contained all the information that Primerica is entitled to request in order to change its beneficiary. It had the name of the new beneficiary, it was dated, it was signed by the policyholder, and it was witnessed. And as Linda Allison, who's a senior adjuster for Primerica, stated in her deposition that if that information is received by Primerica, Primerica will change the beneficiary designation. And that is a ministerial act. That does not require any judgment on the part of Primerica or any deep investigation. But Primerica failed to do that and instead sent a letter to Garvin requesting legal documentation regarding his marriage. But I'm sorry, but that's because Mr. Reid also provided information suggesting he wanted to make a legal change to the name of the person he was married to. So while I take your point that Primerica could have processed the second half of the form as a ministerial act, doesn't that get a little confused, the ministerial aspect of it, when there's more than one thing requested and they're arguably in tension with one another? Well, according to Ms. Allison's testimony, Primerica had what it needed to make the change. I understand the issue with the confusion according to the name, but that was a Primerica form that may be inherently confusing to someone who simply requested a change of beneficiary form. But I think, you know, as we're required to do, if you read that form as a whole, it is difficult to read that in a way that undermines the change of beneficiary designation. Does that address the question? Yes, you can continue. Okay. They failed to make that change despite having their policy in place, despite having that information. Then when Mr. Reid passed away in August of 2016, Isla Reid was sent the claim form for the policy benefits with a letter dated August 16th of 2016. The records that Primerica relied on to send that packet to her identified her as a beneficiary. It wasn't until Primerica's own agent, John Wood, intervened that the question arose as to who was a proper beneficiary. For reasons that are not clear to me, Mr. Wood was very insistent that Isla was not the beneficiary, despite the fact that he knew that Garvin and Isla had been married for over 20 years, and he insisted that Betty Jo was a proper beneficiary. So, pursuant to that request, Primerica sent a claim packet to the Betty Jo, the former house. Now, I'm sorry, once again, sorry not to quibble, but the reason they sent, as I read the record, the reason they sent the claim form to Isla is because they believed she was the same person as Betty Jo. Is that correct? I mean, that's what's in the investigation report as of that date. I understand later there's a different... Right, but that is an inference that could be drawn. I do not read the record to be quite that clear. There was some confusion as to whether they were the same person or not. The key point, though, is that the beneficiary, whether it was same person or not, the beneficiary designation was clear, and Primerica sent a claim packet originally to Isla Reed. It wasn't clear to Mr. Wood. Mr. Wood apparently was not aware until he contacted Primerica that Garvin Reed had filled out a change of beneficiary form. But he consulted what he thought was the proper thing for an agent to consult, which was Primerica's online listing of the beneficiary, and said, wait a minute, aren't you making a mistake here? And Primerica's notes, what they relied on in their records reflected that Isla Reed was the correct beneficiary. That's why they sent her the packet and didn't send one to Betty Jo until Mr. Wood called, and they did it six days later. Sorry, I found the part in the record that I'm thinking of, and it says, it's on appendix 52. It says on August 16th, the claim form was released. The beneficiary is Isla Reed, incontestable. And then it says, Isla Elaine Reed is same person as Betty Reed, name change on file. That's their explanation for why they sent a claim form to Isla Reed in the first instance. So I don't dispute that they might have gotten it wrong in 2002. But then when they sent the form to Isla in 2016, they also, it was another mistake. It was a mistake that maybe made them go back to what they should have been doing. But it wasn't altogether that they had it right. But then Agent Wood came in and confused everything. Agent Wood was correct that Betty Reed was the beneficiary on the account. Is that a fair assessment? Well, there are conflicting records. If you look at Primerica's notes as to who was the beneficiary, there are notes in the file that indicate it was Isla. The beneficiary form was not processed. So there's a conflict between those two. And I would say that points to a failure in the investigation for Primerica to sort through all of that and figure out the records they had in front of them who the proper beneficiary was. I think if they did that, it was not a complicated thing to do. And on Appendix 151, they later, four months later, they do say, we really didn't need a copy of the marriage certificate. The beneficiary change form was on file, et cetera. So I understand what you're saying, that there are different places in the investigation where they come to different conclusions. I just wanted to confirm that when they first sent the form to Isla, they sent it because they thought she was Betty, not because they knew that there was a new wife and that person was the correct beneficiary. I would say that it's certainly a reasonable interpretation. But I think the notation that Betty Jo and Isla are the same person could also be read as just an acknowledgment of the fact that it was not pertinent to who should be sent the beneficiary form and who is entitled to the money. If they're the same person, that's an interesting fact. But what Primerica should be looking at is the beneficiary designation, which in and of itself is complete and fulfills all the requirements in the insurance contract and the internal policies that Primerica has set up for dealing with those things. You know, it strikes me that none of this is really relevant to the interpleader issue on record and the same person problem, which they did sort out. But by the time they sorted it out, they had two different claimants ready to take them to court. Now, if they hadn't had the two conflicting claims, they would have presumably paid Isla and you and Isla would have tried to But that isn't the way it developed. What happened was now they had Betty Jo asserting, based on the same confusion, a claim for the proceeds. And so they did what the federal rules seemed to encourage. They filed an interpleader. May I respond to that, your honor? What's wrong with that assessment? Well, at three different points in time, Primerica came to the correct conclusion. The fact that Primerica bungled the investigation and failed to draw the conclusion it should have from its own investigation and imposed extra contractual obligations on Garvin Reed in order to do what they should have done under the terms contract anyway, there's a distinction between the fact of the confusion and should there have been any confusion. Again, if you look at Lynn Allison's testimony, she's very clear about that point. We have what we needed. The fact that there was confusion as to whether Isla and Betty Jo were the same person or who should be the proper beneficiary when the file is initially reviewed, I think it's very consistent through the conclusions from the beneficiary form, through who was sent the packet originally, to the notes in the file on August 22nd of 2016 and in the investigator's notes from January 10th of 2017. This case was not filed until three or four months after the investigator concluded after reviewing the file that Isla Reed was a proper beneficiary. There was no need to file that interpleader action. I don't think that, to quote from Hoda's case, I don't think the interpleader rule should be a get-out-of-jail-free card and I think that's how Primerica wanted to use it in this case. We have another claim. You know, never mind their role in creating the circumstances that led to that claim, but I don't think that absolves them. That's back to the blameless issue. You don't win unless your blameless theory is sound. Well, the case, the Eighth Circuit case... When the confusion started with a form filled out by not Garvin, but Isla, who may have been concerned about the surviving spouse writer. Well, I think the confusion, if you're referring to the 2002 change form... Yes, yes. And the failure to respond is much more important than the confusion in the form itself. The failure to respond to the 2002 letter? Yes. That's where the problem originated. The problem, Primerica did not process the claim in large part, apparently, because it did not get a response to that. But it's clear from Primerica's own investigator that that letter should not have been sent and that they did not need additional legal documentation in order to make that change. So the failure to respond, although that was a causal factor in Primerica not paying the claim, it was because Primerica was insisting on something it didn't need and wasn't entitled to. If they impose an extra contractual requirement that the policyholder does not fulfill, I don't think that entitles them not to honor the terms of the policy. Did I adequately address the court's question? Well, yeah, except that's a different case than what we have here with the interpleader. We could litigate, but maybe you think we have to litigate whether the 2002 form with its mistake or confusion was so nonetheless clear that it was improper for the insurer to ask for a clarification and not to make a change when there was no response. That strikes me as a very difficult, serious insurance contract claim. 20 years later, I don't see why the district court had to go there. Well, as the Dakota Livestock case held, which is the most, as I understand it, the standard for interpleader cases in this circuit, is that a failure to choose between adverse claims without more does not amount to a breach of legal duty. The issue of whether Primerica was correct or wrong to request additional documentation, I think, goes to the without more and the blamelessness. You know, even on the Homas case, the court said the defect in the investigation can plausibly be blamed for the existence of the underlying ownership controversy, and I think that's a situation we have here. It was a defect in the investigation, and more specifically, failure to draw the logical, entailed conclusion from the investigation that Isla Reid was the proper beneficiary. Okay, very good. Thank you, counsel. Ms. Carson, you're up. I think you need to unmute. Oh, I'm sorry, got ahead of myself. Good morning, your honors. I am Stacey Carson. May it please the court. I represent Primerica Life Insurance Company, and I want to begin by saying that the district court's ruling should be upheld. Because Ms. Reid's counterclaim arises out of conflicting claims to the policy proceeds, and Ms. Reid does not seek to subject Primerica to liability for conduct apart from its failure to resolve the conflicting claims in her favor. The district court ruled that Primerica brought a valid interpleader action, which shielded it from Ms. Reid's counterclaim for breach of contract. In doing so, the district court rested its decision on the Third Circuit's decision in Prudential versus Hovis. Justice Loken, you asked earlier about the application of Hovis in the Eighth Circuit. It has been cited by a number of circuits. I do not believe by the Eighth Circuit. It has been followed by several district courts in this circuit, specifically the Arkansas and Minnesota district courts. We believe that Hovis is instructive here. In the Hovis case, the court looked at two points when it affirmed dismissal of Hovis's counterclaim against Prudential. The first component or category that it looked at was whether the interpleader was properly brought. And then the second analysis was whether the counterclaims were outside the scope of the interpleader action. And I want to begin with the second prong rather than the first, although I want definitely to get to the first. But the second prong, I think, is what we're really talking about here. And under the second prong, the Hovis court considered whether Hovis's counterclaims were directly related to Prudential's failure to resolve the underlying dispute in favor of one of the claimants. Here, Ms. Reid's counterclaim was one for breach of contract. In her counterclaim, she alleged that Primerica breached its policy by not paying the policy proceeds to her. Thus, her counterclaim was directly related to Primerica's unwillingness to resolve the underlying dispute in her favor. And that is precisely what interpleader is designed to prevent. Now, in the context of breach of contract claims, the Ninth Circuit in Michaelman v. Lincoln National Life Insurance Company expanded on this. It recognized that an insurer's good faith belief that it faced the possibility of multiple claims foreclosed a claimant's breach of contract claim because the insurer had satisfied its obligation under the contract by instituting the interpleader action. Ms. Reid's claim was one that rested in contract alone. And Primerica satisfied its obligations under the policy when it instituted the interpleader action. Counsel, let me ask you about that. How would you respond to Ms. Reid's argument that notwithstanding the fact that Mr. Reid failed to respond to the letter, that they were asking for things that they had no reason to ask for and things that went beyond the contract and therefore the fault really didn't lie with Mr. Reid? Well, I guess the first thing I would say, Your Honor, the blame argument really goes to the first prong. But to answer your question, there was confusion in the change form that was submitted by Mr. Reid. In fact, on page 8 of the reply brief that was submitted by Ms. Reid, she more or less concedes that there was confusion or that it could have been misunderstood the way in which it was presented to Primerica. Primerica clearly had questions about why the name change section was completed and what Mr. Reid's intent was. And so it sent the letter of May 2002 to try to clarify that, to try to ensure that Mr. Reid's intent was carried out. I'm sorry, but on page 151, to draw attention to the same thing again, January 10, 2017, after this has been investigated for a while, but before this case is brought, it acknowledges in the investigation notes that they did not need the information that they asked for in the follow-up letter and that they could have processed. The issue was changing. We really did not need copy of marriage license before the new SP was added, Isla Reid. The request to change name was the issue and not making change due to divorce. How is that not an admission that Primerica was at fault for not acting in the appropriate way on the form that was originally said by Isla Reid? Well, I want to draw the court's attention to what is actually said in the letter. In the 2002 letter, it says that legal documents are being requested. It does not specifically say marriage license. So maybe a marriage license wasn't needed if that's what the author of this note meant. That was never really developed in the record. Ms. Harris Reid supposed Ms. Allison, but never asked her what she meant by that statement. And I submit, Your Honor, that if you read and you just read it, the real issue was the name change. Whoever this form was submitted to, I guess now 18 years ago, whoever received that form, they were not sure what Mr. Reid wanted. And so then you fast forward 18 years later, 20 years later, and you've got someone else reviewing it. Someone who's in the claims department, I might add, not the policy owner services department, where the change form would have went to. So, Your Honor, I submit that the legal documents that were being requested may or may not have been a marriage license, but I don't view that as an admission. There was obviously confusion about the form. Counselor, I sensed from some sort of hints in the briefs, but didn't see any clarification that name change versus change of beneficiary might make a difference to the spousal rider. Is that clarified anywhere? I don't believe there is definitely a difference, Your Honor. If you change the name, then whoever was entitled to the spousal rider still has it. Now, if you change the beneficiary, do you also have to change, is there an automatic change to the spousal rider or is, you know? I don't believe that was ever. I'm sorry, Your Honor. The record leaves that unclear. I do not believe it is, but I do believe that. It's not unclear. Tell me what it is. Clarify. Yeah. I believe the spousal rider is a different matter than a change of beneficiary, but it is not developed in the record. Did I answer your question? I know they're different, but the spousal rider, it seems to me that was the third part or the fifth part or whatever of this multi-form, it was addressed. It wasn't in the response, but it's quite possible that Isla, in filling out for Garvin, wanted to make it look like a name change because she thought right or wrong that that would guarantee her the spousal rider. There's nothing to that. There's nothing in the record on that, right? There's not. I'm just sort of what if-ing. Okay. If there's something in the record, I want to know about it. Counsel, can I ask you, is it your position, because you are citing Hovis as the relevant precedent, is it your position that Prime Merica was, in fact, blameless in the creation of this situation that led to the interpleader, that they are no responsibility whatsoever for the creation of Betty Jo's impression, for example, that she was entitled to the money? Correct. Yes, Your Honor, but my argument goes a little bit further than that as well. As a legal matter, if you look at footnote four in Hovis, it seems to say that this blame argument that is being made is not even really applicable to a situation like this one. Rather, the court there says that it would be applicable in a situation such as a tort action where there are multiple claimants and there's a limited pool of insurance proceeds. An insurance company could not interplead those funds and thereby cap the liability for its insurer by filing the interpleader. In other words, the tort fees there would have the fault and would be blameless and therefore could not use the interpleader as a vehicle for absolving itself of fault. What about the other situation mentioned in Hovis where an insurance company could assume some of the fault by botching the investigation of the claim? I think that had to do, and I'm making sure I'm understanding, did that have to do with the isotope example that it gave where the insurance company was trying to figure out who was due the proceeds and the isotopes that they were holding, actually I'm not sure, I think it actually may have been, were somehow damaged while they had them in their possession. As a result of that, the court held that there could be some liability on the part of that entity for the damage that befell those isotopes. I think it's when it's summarizing its decision and it says it doesn't turn it into an all-purpose get out of jail free card, the interpleader, and it says, what they hold is where a stakeholder is blameless with respect to the creation of the ownership controversy, the bringing of the interpleader protects it from liability. And then at the culmination of that paragraph, it's at 265 to 266 in the Hovis decision. It says, our decision here is even potentially consistent with holding a stakeholder liable for its investigation of ownership of the stake, at least where defects in its investigation can plausibly be blamed for the existence of the underlying ownership controversy. It seems to me that if we were to adopt Ms. Reed's view of the facts, this language suggests that Hovis would not apply to exclude Primerica from liability. I don't believe that there was any error in the investigation. And the example that it goes on to give in response to what you just read, Your Honor, is the isotope example that I gave you just now, which is altogether different than what we have here in this case. Okay. But let me retreat back to what you originally asked, which was, are we, is Primerica blameless in the ownership controversy, in the beneficiary controversy? And I submit to the court, it is. Because when it received this form, as Ms. Reed has all but admitted, it was confusing. It sent a letter. It asked Mr. Reed to clarify what his intent was. That was important, as Justice Loken pointed out. It was important to Primerica to know, to carry out his intent. He never responded. And we know from the record that's developed in this case, that in July of 2015, his daughter and he called Primerica. And he was told at that time that Ms. Reed was not the beneficiary, that in fact, Ms. Woodall was. And we know that because his daughter testified to it. We know that because Primerica's notes indicate it. And we know that because subsequent to that, a change form was requested and that form was never returned. Then we also know from other discovery in the case, that Ms. Reed admits in a text message to Ms. Woodall, when they were trying to work out whether they could reach some sort of compromise, they text back and forth. And Ms. Reed admits in the text messages that she knew that she was not the beneficiary and that they had been trying to change it. So even if you believe that there was something wrong with what was requested or not requested, back in 2002, Mr. Reed knew who the beneficiary was. In 2015, and he could have made that change. He requested the form to make the change, and he never did that. And that's an important point here. So yes, Your Honor, I do not believe that Primerica is blameworthy here. I'm not sure that the blameworthy rule that the appellant is espousing actually applies but if it does, it's Primerica's position that it is not at fault for the discrepancy. Now, I guess I'll switch and talk about- Your time has been up for quite a while. Yeah, I'm sorry. I can't see the timer, I apologize. No, no, you're answering Judge Bittling's question as you should. I'm very sorry, Your Honor. Thank you. We would have requested- I apologize. Does Mr. Putnam have some time? I had attempted to reserve two minutes, Your Honor. I hope that that was okay. All of Mr. Putnam's time was expired, Judge. We had him talk for a lot longer than his 10 minutes. Yeah, I think we understand the issues and it's better all briefed You've clarified some of the confusion this morning. We appreciate your good briefs and arguments and we'll take it under advisement. Thank you all so very much. Thank you. Thank you very much. Oh, they ran away. All right, so I have to close it down.